J. B. HISERODT, ADMR., *v.* J. B. HAMLETT ET AL.

PAROL TRUST. *Revocable trust. Contingency of death. Interest of bene-
ficiary.*

> Where the insured in a life policy payable to himself, his adminis-
> trators, executors or assigns, transfers the same to a third person
> as collateral security for a small loan, with directions that, in case
> anything should happen to him (construed to mean in case of his
> death) while the loan remained unpaid, such person should collect
> the policy, and, after deducting the amount of his loan, divide the
> balance of the proceeds between the wife and child of the insured,
> a parol trust is created in favor of the wife and child, whereby
> they acquire an interest *in præsenti*, and, on the death of the in-
> sured without revoking the trust, such interest becomes absolute
> as against his administrator, in a proceeding not involving the
> rights of creditors of the insured.

FROM the chancery court of Adams county.

HON. CLAUDE PINTARD, Chancellor.

B. C. Smitha died intestate in January, 1895.  At the time
of his death he was carrying a life policy in the Mutual Life
Insurance Company of New York for $5,000, payable to
himself, ''his executors, administrators or assigns.''  By its
terms a premium of $179.50 per year was to be paid for fifteen
years.  J. B. Hamlett loaned Smitha, in his lifetime, $179.50
and took as security an assignment of said policy, in writing.
After Smitha's death Hamlett collected the face of the policy
and repaid himself the amount of the loan.

The appellant, Hiserodt, on his own application as a creditor,
was duly appointed administrator of the estate of said B. C.
Smitha.  In July, 1895, as such administrator, he filed the
bill in this case against J. B. Hamlett, Mrs. Rosa Smitha,
the widow of B. C. Smitha, and her infant son, seeking to have
the assignment to Hamlett declared a collateral security for his
loan and to have the remainder of the money collected by Ham-

lett paid over to Hiserodt as administrator, and the trust, if any, declared to be null and void.

Defendants answered admitting nearly all the allegations of the bill, but set up the following reasons why Hamlett refused to pay over the money collected to the administrator: That, on the ninth of August, 1894, Smitha, not having the money with which to pay the premium on the policy, then due, and desiring to keep it in force for the benefit of his wife and child, borrowed the money from Hamlett and executed an assignment of said policy to Hamlett upon a parol trust that, should Smitha die without having repaid Hamlett, he (Hamlett) as assignee of the policy, should collect the $5,000, repay himself, and divide the remainder between the wife and child; that Smitha died intestate, leaving his wife and child his only heirs, and the insurance money was exempted to them under § 1965 of the code of 1892.

Hamlett testified that, when procuring the loan, Smitha requested that, if anything should happen to him, he should collect the money, pay himself the loan and interest, and pay the balance to Mrs. Smitha for the benefit of herself and child, share and share alike. Hamlett did not claim any interest in the money since the loan was repaid, and stated that had Smitha lived and paid the note, he would have turned the policy over to him. Mrs. Smitha, D. Scudmore and other witnesses testified that they heard Smitha say in his lifetime, at different times, that, in case of his death, his wife and child were provided for, and would get the insurance money. Mrs. Smitha stated that her husband told her, a short time before he died, that he intended to pay Hamlett, get the policy, and have it made out in her name.

From a decree dismissing complainants' bill, he appealed.

*E. E. Brown,* for appellant.

After Hamlett was paid the amount of his loan, he had no further claim on the balance of the money, and should have

paid it to appellant as administrator of assured's estate.   13 Am. & Eng. Enc. L., 648, and cases cited; 52 N. W. Rep., 1012; 13 S. W. Rep., 304; 13 S. E. Rep., 241; *Warnock* v. *Davis*, 104 U. S., 775.   The so-called parol trust was simply a request by assured that if anything happened to him, for Hamlett to collect his life insurance policy, pay the note, and turn over the balance to Mrs. Smitha for the benefit of herself and child.   Even if competent evidence, this created no trust, and Hamlett expressly states that if assured had paid the note, he would have returned him the policy.   For an exposition of what is necessary to create a parol trust, see 1 Thompson on Trials, sec. 1353.   If there was a valid assignment, it was void as to assured's existing creditors because it was voluntary. *Catchings* v. *Manlove*, 39 Miss., 655.

*Calhoon & Green*, on same side.

The assignment was absolute on its face, hence the legal title to the policy and its proceeds was in Hamlett.   But Hamlett admits that he held the policy as security, and that if the loan had been paid by Smitha during his life, under the terms of the hypothecation, he would have reassigned the policy to Smitha.   It was the common case of the assignment of a chose in action as collateral security.   If this was all when Hamlett's debt was paid, Smitha's estate would have been entitled to the balance, and Hamlett would have been in equity trustee for his estate.   But Hamlett contends that Smitha's wife and child are entitled to the balance because of the trust created at the time of the assignment.   This language is clearly testamentary so far as the wife and child are concerned.   "If anything should happen to him," meant in the event of his death while the assignee held the policy.   So long as the assignor and the assignee were alive, the policy was to be held as collateral, and, upon payment of the debt, was to be returned to the assignor. The wife and child were to have no interest in the policy or its proceeds during Smitha's life.   In the event of his death

only was any interest or estate to be created in them. Tested by the rules laid down in *Wall* v. *Wall*, 30 Miss., 96, and *Sartor* v. *Sartor*, 39 Miss., 771, it is clear that this was a nuncupative will, for the intention was that *in præsenti* no estate should vest in the wife and child. During the life of Smitha no one was to be interested in the policy but Hamlett, as surety, and Smitha. Upon Smitha's death, and only then, a new estate arose in Smitha's wife and child, whereby they were given the proceeds of the policy after the debt to Hamlett was discharged. As such it would be void because not probated, but the proceeds of the policy would be assets for creditors. Hamlett, in undertaking to deal with Smitha's estate, was executor *de son tort*, and is liable to account for the full amount of the assets received by him. The whole funds should be brought into the hands of the administrator, as it is admitted that the estate is insolvent, and there could be a *pro rata* distribution. *Hardy* v. *Thomas*, 23 Miss., 544; *Gay* v. *Lemle*, 32 Miss., 309.

The equity of redemption remained in Smitha during his life. At his death this equity of redemption vested in his administrator, and Hiserodt had the equitable title to the surplus proceeds of the policy in Hamlett's hands. As a bar to this title, Hamlett and Mrs. Smitha and child set up that Smitha, at the time the loan was made, directed Hamlett, in the event of his death, while Hamlett still had the legal title to the policy, to distribute the surplus proceeds, share and share alike, between Mrs. Smitha and child. There was no such trust or bequest in the written assignment. The legal title to the policy and its proceeds are vested in Hamlett as mortgagee so far as the assignment is operative during life, but, upon death, after the satisfaction of the mortgage, it is said a new trust is to arise in favor of the wife and child, and this by parol direction in addition to the terms of the writing. We do not contend that a trust cannot be created by parol in chattels or choses in action. We do contend, however, that where such assignment

is sought to be made by will, that the statute of wills requires the same to be done in writing. Where, by a will duly attested, lands were given to A and his heirs "upon trust," without specifying the trust, and then, as by a codicil, a paper was signed specifying the trust, but not duly attested, it was held that the title passed to the heirs at law. *Adlington* v. *Cann*, 3 Atk., 151.

If a legacy is bequeathed by a will duly executed to A "upon trust," and the testator, by parol, expresses the intention that it shall be held by A in trust for B, such a trust is a testamentary disposition of the equitable interest in the chattel, and therefore void, because the statute of wills requires wills to be written. If it be said that, where a personal chattel is well bequeathed, a trust of it, as excepted from the seventh section of the statute of frauds, may be raised by a mere parol declaration, the answer is that a wide distinction exists between testamentary dispositions and declarations of trust. The former are ambulatory until the death of the testator, but the latter take effect, if at all, at the time of the execution. If the intended disposition be of a testamentary character, and not to take effect in the testator's lifetime, but ambulatory until his death, such disposition is inoperative unless it be declared in writing in strict conformity with the statutory enactments regulating devises and bequests. Perry on Trusts (ed. 1871), sec. 92. If personal property is bequeathed to A in trust, and no trust is specified in the will, no paper not referred to in the will would be competent to prove the trust intended, and the equitable title would descend to the heir. *Ib.*, sec. 93. There is no difference in principle between this case and those referred to in Lewin on Trusts, p. 64, sec. 17.

*Reed & Brandon* and *Martin & Lanneau*, for appellees.

There is no question as to the validity of a parol trust at common law. Trusts at common law may be declared and proved by parol. The statute of frauds has no application in

such cases.   27 Am. & Eng. Enc. L., p. 54.   Parol evidence that an assignment is in trust is admissible.   106 Mass., 322. Valid trusts of chattels may be created and proved and established by parol declarations as well before as after the statute of frauds.   14 Allen, 527; 128 Mass., 161; *Ib.*, 380; 130 *Ib.*, 130.   In *Anding* v. *Davis*, 38 Miss., 574, it is declared that a parol trust in both real and personal estate is valid at common law, though the common law has been altered as to real estate by statute.   Section 4230, code 1892, applies only to the creation of trusts in land, and § 4231 applies not to the creation, but merely to the assignment or transfer, of a trust previously created in land.

*Mayes & Harris*, on same side.

No specific form of words was necessary in order to create a trust in favor of the wife and child, in the hands of the creditor who took the assignment originally.   And such an assignment is not void because of the operation of the statute of frauds. *Alexander* v. *Berry*, 54 Miss., 422; *Murphy* v. *Reed*, 64 Miss., 614; Hill on Trustees, marginal page 57.

Argued orally by *Marcellus Green*, for the appellant, and by *Edward Mayes*, for the appellees.

WHITFIELD, J., delivered the opinion of the court.

The bill is filed by appellant in his character as administrator alone.   No just construction can make of it anything else.   If, therefore, it were proper to file a bill in that capacity, and, also, at the same time, in his capacity as creditor seeking to set aside the parol trust as fraudulent against creditors, he has not here done so, and we must treat it as a bill by the administrator alone.   Nor does it make any difference, in this view, that the bill avers the insolvency of his intestate.   *Blake* v. *Blake*, 53 Miss., 182, is decisive in this view.   We are satisfied, after the most careful consideration, that the fair result of the testi-

mony, taken as a whole, is that Smitha created a valid parol trust by what he said and did at the time of the delivery to Hamlett of the policy; and, if so, the fact that he reserved the power of revoking the trust thus once perfectly created and constituted, upon a contingency to happen in his lifetime, would not defeat the trust if he did not in fact revoke it, the contingency not happening in his lifetime.   We must not allow ourselves to be confused by the fact that the event upon the happening of which the interest was to be enjoyed, the trust was to be executed, was death.   It is as competent for one to make the event in the future upon the happening of which the estate is to come into possession, and the trust is to be executed, the death of the donor, as any other event.   The fact, in such case, that the event named is death, rather than some other selected event, is not at all determinative of the quality or legal character of the trust.   It is a mere time when the trust, completely and perfectly constituted theretofore, is, as to the estate already thus vested in interest by it in the trustee, for the beneficiaries, to come into possession—to be enjoyed.   Here Smitha, at the time of the delivery of the policy to Hamlett, directed him, in case anything happened—in case, as otherwise put, of his death—to divide the surplus over his debt, secured by the assignment—a wholly separate matter—share and share alike, between his wife and child. The phrase, "in case of his death," did not have the legal effect of preventing the trust from taking effect *in præsenti*, to be enjoyed *in futuro*.   The trust was then perfectly constituted.   The estate in interest in the surplus then, in his lifetime—at the time of such creation—vested *in præsenti* in the trustee, Hamlett, for the beneficiaries.   Hamlett was by it then clothed by the law, applied to the transaction thus consummated, with the duties and responsibilities of a trustee, and the beneficiaries with the right to the estate, subject to Smitha's right of revocation, if exercised according to the terms of the trust as declared.   There is no testamentary feature here.

"No testament is of any force while the testator liveth." It is ambulatory wholly. It vests no present interest, absolute or conditional, subject to revocation or not. It is waste paper till death vitalizes it, whereas a revocable trust is vital till revoked. A completely constituted parol trust of personalty is not ambulatory at all, as to the present vesting of interest—subject to revocation, or not so subject. It is vitalized by what is done then, at the time of its constitution by the donor, and is as effectual thenceforward, even when subject to revocation, until duly revoked, as any other disposition of property, and to be administered according to the legal character stamped upon it at the time of its creation. One may do what he will, within legal limits, with his own. He may declare a trust absolute, never thereafter having, in anywise, the right to interfere with it, or he may declare a trust revocable upon a named contingency.

In the former case the beneficiaries take absolutely; in the other, upon the condition that the revocation does not follow upon the happening of the contingency. If no such revocation follows, their rights are perfect. But, in the latter case, as completely as in the former, the estate or interest vests *in præsenti* in the one case, never to be defeated; in the other, subject to defeasance in the manner indicated in the trust.

In our own state, the case of *Wall* v. *Wall*, 30 Miss., 91, perfectly establishes this distinction. There the instrument was retained by the grantor in his custody until his death, and he stated that the acknowledgment and delivery of the instrument and placing it among his (the grantor's) papers, was intended by him as a delivery of said paper at his death, and it was earnestly contended that it was a testamentary disposition, and void. But the court said: "The determination of the legal character of instruments of this kind depends mainly upon the question whether the maker intended to convey any estate or interest to vest before his death, and upon the execution of the paper, or . . . whether all interest and

estate whatever were to take effect only after his death.
.   .   .   But its character [the character of the instrument
there] must be determined upon a consideration of all its
parts, comparing one part with another, in order to ascer-
tain the purpose which the party had in view, and the mode
by which he intended to accomplish it.'' Just as here, the
whole evidence (not isolated fragments of it) must be looked
to, comparing part with part. The court concludes: ''Upon
the whole, we consider that this deed conveyed the present
right to the property, to be enjoyed in possession at the
donor's death, and subject to his power to annul it in the
way limited in the deed. This was a substantial right in the
donees, which excluded the general power of alienation by the
donor, and of revocation in any other mode than that prescribed
in the deed. And in this consists the difference between such
conveyance and a will; that, by the former, a present interest
vests, which will take place in possession *in futuro*, unless de-
feated in the mode, and according to the terms, specified in the
conveyance; and, in the latter, no right, estate or interest what-
ever vests until the death of the testator. In the one case the
conveyance takes effect *in præsenti*, to a certain extent; in the
other, it has no effect whatever until the death of the testator.''
And the correctness of this distinction is abundantly sustained,
with great clearness of reasoning, in many authorities. Out
of many we refer specially to the masterly opinion of Finch,
J. (one of the ablest judges gracing the bench in this country),
in *Van Cott* v. *Prentice*, 104 N. Y., 45; *Lines* v. *Lines*, 142
Pa. St., 149, s.c. 24 Am. St. Rep., 487; *Dickerson's appeal*,
2 Am. St. Rep., 547, and *Stone* v. *Hackett*, 12 Gray (Mass.),
227 (opinion by Bigelow, J.), all directly in point. See, also,
the numerous authorities cited in 27 Am. & Eng. Enc. L. (1st
ed.), 310 *et seq.*

The first cited case is a very striking one, and upholds a
trust on far less conclusive evidence than supports the trust at

bar.    That case was this:  '' P, by an instrument termed by him
therein ' his deed of trust,' transferred to plaintiff certain se-
curities and funds, in trust, to invest and collect the income
thereon during the life of P, to pay over the income to K, to
be by him appropriated for the use of four beneficiaries named,
and, at the death of P, the principal to be disposed of in ac-
cordance with instructions contained in a writing sealed up and
delivered with the instrument, with directions that it should
not be opened until such death.    A full power of revocation was
reserved, and it was provided, as a condition of the grant, that
the beneficiaries should have no legal or equitable right to the
principal or income;  that the trustee should hold, subject to the
grantor's direction and control, until his death.    It was also
declared that if any attempt should be made to interfere with
the execution of the trust, or to claim the securities contrary
to the conditions of the instrument, the trust should at once
cease and determine.    In an action to recover possession of the
securities, which had come into the hands of defendants (the
executors of the will of P), it was held that a valid trust was
fully and completely constituted, and, as the same was not re-
voked by the settler during his life, the trustee was entitled to
the possession of the trust property;  that it was immaterial that
the grant was voluntary and without consideration [no creditor's
rights being there involved, as none are here involved on the
present record];  that the declaration that the beneficiaries should
have no legal or equitable right was not intended as a denial of
an equitable right to enforce the trust as against the trustee,
while the settlement remained unrevoked, but only as a denial
of any right as against the settler;  also, that the validity of the
title of the trustee was not affected by the fact that he held
subject to the control and direction of P;  that, while the trust
continued and existed only at the will of the settler, it was good
and effectual until revoked ''—the court significantly observing:
'' We ought not to put the creator of this trust in the attitude
of deliberately nullifying his own evident purpose.    That he

meant to create an effective trust is beyond all question, and a construction which makes him destroy in the very effort to create, should not prevail if there be any other rational interpretation. . . . The trustee is directed to hold the fund and invest and reinvest and pay over as ordered, but is to do all this subject to the settler's absolute control. This cannot mean that the trustee is to have no title, and the trust no effective existence, and the property remain the settler's, but that the trust and the title, good and effectual while it stands, is, nevertheless, to continue and exist only at the will and pleasure of the settler. Its continued existence was to be absolutely subject to the direction and control of Prentice—a result always inevitable when a power of revocation is reserved. We discover nothing in the provisions of the deed, properly construed, inconsistent with a completely constituted trust, wholly voluntary and benevolent, and subject to revocation by the settler at any moment; a kind of trust of which the books furnish many instances, and which, indeed, are sometimes subject to doubt and suspicion, if the power of revocation is absent."

In *Lines* v. *Lines, supra*, the court say: "The power of revocation reserved in the deed, having never been exercised, was precisely as if it had never existed. If the right is not exercised during the lifetime of the donor, and according to the terms in which it is reserved, the validity of the trust remains unaffected, as though there had never been a reserved right of revocation." Says Bigelow, J., in *Stone* v. *Hackett, supra :* "A power of revocation is perfectly consistent with the creation of a valid trust. It does not, in any degree, affect the legal title to the property. That passes to the donee, and remains vested for the purposes of the trust, notwithstanding the existence of the right to revoke it." See, also, 1 Perry, Trust, § 104, bottom of page 103. In Dickerson's appeal, *supra*, the grantor was also himself the trustee.

It is insisted that Hamlett's statement, on cross-examination, that, had Smitha paid him, he would have delivered the policy

back to Smitha, is fatal to this view.   But whether the trust was completely constituted by what Smitha said or did at the time of the delivery of the policy to Hamlett, is not to be determined by any mistaken notion of Hamlett as to whether it was so constituted a trust, but by the legal character, as a trust or not, which the law stamped on the transaction, when and as it occurred.   And, if it were true that the power of revocation was to be exercised by demanding from Hamlett and receiving back the policy—if that were to be the precise mode of the exercise of the power of revocation—the complete answer is that the power to revoke was, in fact, never so exercised.   We do not deal here with the rights of creditors.   We only add that *Coates* v. *Worthy*, 72 Miss., 575, did not decide that the proceeds of the policy in that case would have been exempt as against a debt contracted prior to the act of April 1, 1892, the assured being insolvent.   The argument pressed upon us in that case, which went off on a demurrer to the bill, was that § 1552 of code of 1892 made the proceeds there liable, there being no widow or child.   We say thus much, however, as to this case, simply to prevent misconception, as to *Coates* v. *Worthy*, *supra*, and not as indicating any view as to what we would hold on that feature in this case, on its peculiar facts, even were a proper bill filed.   The present decree is correct, and is

*Affirmed.*