Redkey v. Worthington.

## TRUSTS AND TRUSTEES.

[Highland (4th) Circuit Court, October Term, 1909.]

Cherrington, Jones and Walters, JJ.

CHARLES C. REDKEY, EXR., v. WILLIAM WORTHINGTON, ADMR.

INSTRUMENT TRANSFERRING MONEY TO TRUSTEE FOR DISTRIBUTION
AFTER DONOR'S DEATH, PROVIDING FOR APPOINTMENT BY PROBATE
COURT OF SUCCESSOR UPON DEATH OF TRUSTEE AND RESERVING RIGHT
TO REVOKE SUCH APPOINTMENT, MAKES GRANTOR TRUSTEE UPON DELIV-
ERY OF FUND, PASSES PRESENT TITLE TO TRUSTEE, AND NO REVOCATION
HAVING BEEN EFFECTED, RIGHT OF POSSESSION VESTS IN BENEFICIA-
RIES AT DONOR'S DEATH.

On October 14, 1905, J W being seriously ill, transferred by
writing the sum of $6,200 to one M R as trustee to receive
and hold and after the donor's death, to distribute the same to
designated beneficiaries therein named, in various amounts.
The written instrument provided, that, if M R, the nominated
trustee, should die, that the probate judge should nominate
his successor, but reserved the right to "revoke this appoint-
ment at any time" during his life. J W drew a check payable
to M R, trustee for the amount, and said trustee deposited the
same in bank in the name of himself as trustee for J W.
Action by J W's administrator to recover from M R's executor
the amount named as part of J W's estate. The beneficiaries
named in the instrument, by interpleader, also seek to main-
tain their respective rights to the fund: Held, (1) Under
the terms of the instrument M R became the trustee for the
beneficiaries therein named, and not the agent or trustee of
the donor. (2) The written instrument was a valid declaration
of trust and passed a present legal title to the trustee, under
a trust to deliver the amounts named to the designated
beneficiaries after the death of the donor. (3) The require-
ments and formalities of testamentary disposition are not
necessary where the corpus of the property is transferred to a
trustee by an instrument containing plain and unequivocal
declarations of the trust and its uses, although its ultimate
distribution is not to be made until after the death of the
donor. (4) The power of revocation in the instrument is
construed to mean a veto upon the appointment that might
be made by the probate judge; but should it be construed as
a power reserved by the donor to revoke the trust, inasmuch
as the power was not exercised in the life of the donor, the
trust remained absolute, and at the death of the donor, the
property and the right of possession passed to the beneficiaries
named.

[Syllabus by the court.]

Highland County.

*S. F. Steele,* for plaintiff in error.

*John Logan* and *Post & Reid* and *Irvin McD. Smith,* for defendants in error.

*D. Q. Morrow* and *Boyd & Slutes,* for the Board of Home Missions and Church Extension of the Methodist Episcopal Church, the Woman's Home Missionary Society of the Methodist Episcopal Church, and the Board of Foreign Missions of the Methodist Episcopal Church.

*D. Q. Morrow* and *Roettinger & Roettinger,* for the Woman's Foreign Missionary Society of the Methodist Episcopal Church.

*D. Q. Morrow* and *Wm. W. Prather,* for the Methodist Home for the Aged.

*George L. Garrett,* for trustee and East Monroe Methodist Church.

## WALTERS, J.

Action by Charles C. Redkey, as executor of the last will and testament of Martin Redkey, deceased, against William Worthington, as administrator *de bonis non* with the will annexed of Joseph Worthington, deceased, the Board of Home Missions and Church Extension of the Methodist Episcopal Church, the Board of Foreign Missions of the Methodist Episcopal Church, the Woman's Foreign Missionary Society of the Methodist Episcopal Church, the Woman's Home Missionary Society of the Methodist Episcopal Church, the Methodist Home for the Aged, the Trustees of the East Monroe Methodist Episcopal Church, the Leesburg bank of Leesburg, Ohio, and George L. Garrett, Trustee.

Charles C. Redkey, as executor, etc., plaintiff in error, against William Worthington, as administrator, etc., defendant in error, is in this court on petition in error to reverse the judgment of the court of common pleas.

Joseph Worthington, a resident of this county, died on May 28, 1906, testate. He appointed Martin Redkey executor of his will. Martin Redkey died March 18, 1907, before the completion of the settlement of his trust under that will. Charles C. Redkey was appointed executor of Martin Redkey's

### Redkey v. Worthington.

will. On October 13, 1905, by the testimony as it is shown here, a will was executed by Joseph Worthington. Martin Redkey was present and wrote the will. On the morning of October 14, 1905, Martin Redkey repaired to the residence of Joseph Worthington and informed him that after thinking the matter over he was doubtful as to whether or not certain clauses in the will, by which certain associations, which are to be hereafter named, and which were named in a contract or declaration of trust, would be valid, and that there might be some trouble after his death in regard to the same by virtue of the provisions of Gen. Code 10504 (R. S. 5915), of our statutes, which provides that bequests, where persons have lineal descendants, to charitable associations, unless executed within a year before the death of the testator, are invalid. Thereupon the old will was destroyed and it was suggested that these associations or beneficiaries that were named in the will of October 13, should be provided for by what they please to term a "Trust Instrument."

Thereupon the following instrument was drawn up and signed:

"I, Joseph Worthington, of Highland county, Ohio, hereby appoint Martin Redkey a trustee in trust to receive and hold and after my death disburse the following sum of money and other valuable assets, to-wit: Six thousand two hundred dollars, which sums are to be disbursed as follows, to-wit:

To the trustees of East Monroe Methodist Church, one thousand dollars in perpetuity.

To the Foreign and Home Missionary Societies and Women's Home and Foreign Societies of the Methodist Episcopal Church, one thousand dollars each.

To the Wednesday Club Library Association of Leesburg, Ohio, the sum of two hundred dollars, in perpetuity, the proceeds to be used to pay expense of keeping up said library. In the event the society disbands I direct my said trustee to collect and pay over to the Methodist Church of Leesburg, Ohio, the said sum for the support of the church.

### Highland County.

Also in the event of the dissolution of the Angeline Johnson Altruistic Society, to recover the one thousand dollars previously given to it and pay the same to the Methodist Church of Leesburg for the benefit of the poor as provided for in another ·paper now on record in the recorder's office, Hillsboro, Ohio.

To the Methodist Home for the Aged at Cincinnati, Ohio, one thousand dollars.

In the event of the death of said trustee, I request the probate court to appoint a trustee to serve in his stead and complete the trust as above set forth.

I reserve the right to revoke this appointment at any time during my life.

In testimony whereof I have subscribed my name this 14th day of October, 1905.''

Signed ''Joseph Worthington.'' ''Attest: J. W. Rains, Hattie Leaverton.''

Upon the death of Martin Redkey, the plaintiff below, William Worthington was appointed administrator *de bonis non* with the will annexed of Joseph Worthington's estate, and he, as such administrator, brought suit against Charles C. Redkey and the different associations that are named in the paper which I have just read, for the purpose of recovering for the estate of Joseph Worthington the sum of sixty-two hundred dollars named therein.

Issues were made up and the whole contention rests upon the construction the court will be pleased to give to this instrument called a ''Declaration of Trust,'' and signed by Joseph Worthington.

It is claimed on behalf of the administrator for Joseph Worthington that this sum falls back into his estate because the instrument is not such a one as is recognized by law to 'pass to the beneficiaries named, the several sums of money therein provided, and the first question that presents itself for the consideration by the court is:

Did the instrument executed by Joseph Worthington cre-

Redkey v. Worthington.

ate a valid trust, or did it fail by reason of some incompleteness or some informality?

It is claimed on behalf of the attorneys of the personal representative of Joseph Worthington's estate that the instrument is invalid to pass title to these beneficiaries named, because it is in the nature of a testamentary disposition, and not being executed according to the formalities prescribed by the statutes for the execution of wills, that it is for that reason invalid.

It is claimed on behalf of the attorneys for the beneficiaries named in the instrument that it is a valid declaration of a trust and that the money should be paid to them as indicated therein.

The Supreme Court of Ohio, in *Mannix v. Purcell*, 46 Ohio St. 102 [19 N. E. Rep. 572; 2 L. R. A. 753; 15 Am. St. Rep. 562], has defined the elements of a trust as follows:

"Wherever there is a trustee there is necessarily a subject of the trust—the estate; an object of the trust—the use, and a *cestui que trust*—the beneficiary of the trust."

And in the same case defines a trust thus:

"A trust is where property is conferred upon and accepted by one person on the terms of holding, using or disposing of it for the benefit of another."

The counsel for the representative of the estate of Joseph Worthington rely upon three cases that have been cited, and decided by the Supreme Court of Ohio, as settling the construction that should be given to this instrument, and the learned trial judge below based his decision upon the invalidity of that instrument upon those three cases.

It will therefore necessitate an examination of those cases to determine whether or not the learned judge below was correct in his conclusion.

The first case is *Phipps v. Hope*, 16 Ohio St. 586, where one Joseph Hope had a note secured by mortgage in the sum of $4,000, and he attempted to give that note to a young man by the name of Phipps, his nephew, who had worked for him

and labored for him on his farm for a long time, and he attempted to give it to him by the following language:

"The contents of this envelope is to be given to Thomas H. Phipps, in payment of wages for services rendered since he has been living with me, on the farm.

"N. B. He is also authorized by me to indorse this note, and to collect and enter satisfaction at the recorder's office in Chillicothe, when paid. Joseph Hope."

The writing on said envelope is in these words and figures:

"Jan. 13, 1862. This is to be given to Phipps by the person legally authorized to examine contents. J. Hope."

After the execution of this paper or these papers, the decedent, Joseph Hope, about March 26, 1862, received one year's interest on said note, and the said note together with the memorandum that he had made upon the same and the envelope, were continued in the possession of the attempted donor until after his decease.

On that state of facts, the Supreme Court say, in an action brought by Phipps to recover, that he cannot do so; that the "directions by an owner in respect to a disposition of his property, to take effect after his death, and different from such as the law would prescribe in case of intestacy, are of no validity unless made through the medium of a last will and testament."

The decision is planted upon the idea and principle that there was an attempted gift to be made by the donor in this case, and that it failed for want of delivery; that it was neither a gift *inter vivos* nor *causa mortis,* and the decision is planted upon that ground.

There is no suggestion either in the syllabi or in the opinion delivered by the court which negatives the idea that a valid declaration of a trust in Ohio may not be made.

We think, therefore, very little light is shed upon this case by the decision of the Supreme Court in that case.

The next case relied upon is a case of *Gano* v. *Fisk,* 43 Ohio St. 462 [3 N. E. Rep. 532; 54 Am. St. Rep. 819].

Mr. Gano, an old gentleman, believing that death was near, said to his daughter: "My notes are in a little box on the

Redkey v. Worthington.

bureau there; I want you to take them and divide them equally among you children." He told her to get the key to the box, and she got the key and tried it in the box, and gave the key to her husband for safe-keeping. After his death intestate, she took the box and did not divide the notes, but returned them to the administrator, and they were appraised and held as part of the estate. In an action by the daughters, claiming for themselves and the son, the notes and their proceeds, as against the administrator and the widow.

Held first these facts do not show such a delivery as constitutes a valid gift "causa mortis."

The whole decision in that case was planted upon the fact that there was no valid delivery of these notes (there were quite a good many of them, some thirty-eight notes for various amounts) and the Supreme Court in delivering the opinion says, among other things, how were these notes to be divided; some of the notes were supposed to be good and some not good, and the different amounts, how were they to be divided? No directions were given, and the donee or the person to whom they were given for distribution did not distribute them, but delivered them to the administrator, together with the box wherein they were contained, and they were appraised, and after that the action was brought, and the court says, in delivering the opinion:

"To constitute a valid gift the transfer must be consummated, and not remain incomplete, or rest in mere intention; and this is so whether the gift is by delivery only, or by the creation of a trust in a third person, or in the donor; enough must be done to pass the title."

The only thing said about a will is in the last paragraph of the opinion, in which the writer of the opinion says:

"This attempt to make a will for the father and to dispose of his property, 'different from such as the law would prescribe in case of intestacy,' is 'of no validity.'"

So that case passed off on the fact that there had been no delivery.

It is confidently relied upon by counsel for Joseph Worth-

ington's estate though, however that case may be decided, that *Flanders* v. *Blandy*, 45 Ohio St. 110 [12 N. E. Rep. 321], comes more nearly deciding the question in this case.

In that case it seems a father set apart some United States bonds as a gift to his daughter. The bonds were never delivered to her, but he collected the interest and paid over the interest to her, and while she was away in a distant part of the country he took these bonds and had them cashed and put them in a Cashmere goat business, and he wrote his daughter a letter telling her what he had done, and had the letter stamped as a contract, and he promised her if she did not elect to accept the investment in lieu of the bonds, that he would retain it himself and pay her $2,000, with interest in lieu thereof. She concluded to take the $2,000, and after his death she brought an action to recover.

In the case the Supreme Court held:

"First. That there was no good and sufficient consideration to support the promise on which the suit was brought. Second. That the transaction between the father and daughter was not a valid gift *inter vivos*. Third. That there was no valid declaration of trust of the bonds in favor of the daughter."

As we look at this case, it was certainly decided right on the particular or peculiar facts of that case. The bonds were never delivered; they were susceptible of easy and quick delivery; they were never delivered to the daughter. The donor (the father) held possession, and it is true he collected the interest and paid her the interest, but in her absence he exercised such dominion over them as that he converted them into money and put them in a separate business, and then made this proposition to give her an interest in the business or pay her $2,000.

In the opinion is found the following memorandum from the case of *Young* v. *Young*, 80 N. Y. 422, 430 [36 Am. Rep. 643].

"The transaction," says Rapallo, J., in delivering the opinion of the court, "is sought to be sustained in two aspects.

Redkey v. Worthington.

First, as an actual executed gift, and secondly, as a declaration of trust. These positions are antagonistic to each other, for if a trust was created, the possession of the bonds and the legal title thereto, remained in the. trustee.. In that case there was no delivery to the donee, and consequently no valid executed gift, while if there was a valid gift, the possession and legal title must have been transferred to the donee, and no trust was created.''

The Supreme Court, *Flanders* v. *Blandy, supra,* p. 115, now say:

''It is manifest that there was an inchoate gift of the bonds by the decedent which he never completed; but we find nothing that can be construed into a declaration that he held them in trust, or that he regarded himself as standing, in reference to the bonds, in a fiduciary relation to his daughter.'' And further says, p. 116:

''It is obvious and well settled by authority that before the owner can be held as a trustee for the benefit of a mere volunteer, there must be a distinct, perfect and unequivocal declaration of trust. There should be an expression of an intention to become a trustee, not that the owner should use technical words or language, but he should declare in unmistakable terms that he means to stand in a fiduciary relation to the object of his bounty. The record shows no such declaration by the decedent, and his acts were wholly inconsistent with the idea of making himself a trustee.''

The Supreme Court in the opinion, while not in the syllabus, recognizes that a trust in property may be declared in Ohio if it is done in unequivocal terms.

It is evident to our minds that these three cases furnish no authority for the decision of the case at bar.

In this case at bar the undisputed testimony, and in fact the admissions in the pleadings by the parties, shows that there was a delivery of the $6,200, and therein is the distinction between these three cases and the one at bar. The three cases going off on the proposition that there had been no delivery, and in the last case of *Flanders* v. *Blandy, supra,* that

Highland County.

there had been no declaration of trust, which was very apparent from the statement of the facts and the pleadings in the case; and if there had been there an inconsistency, as the Supreme Court say, and the claim first, it was a gift, and next, a declaration of trust, were wholly antagonistic and inconsistent with each other, and they could not be maintained.

So we are of the opinion that the learned court below was in error in basing his decision in this case upon the decisions just adverted to, and for the reasons we have already stated.

Now, can a trust of this character be made or declared in Ohio and be legal, as is set forth in the instrument which I have just read?

In *Watkins* v. *Schlecter,* 9 Dec. 590, 594 (7 N. P. 42), is an interesting decision by the superior court of Cincinnati in 1886, and the facts in that case are, briefly, that A being solvent and childless, had a wife who was hopelessly insane, and by an instrument he created himself and another, trustees, to pay the income to himself during his life, and upon his dying in the lifetime of his wife, the surviving trustee was to hold for certain designated kindred; but in case of the death of his wife during A's life, the trust thereupon to determine and cease, and the property to be retransferred to him. He died leaving his insane widow surviving. The guardian of the widow brought suit to recover the sum so alleged to be in trust, being in the sum of $100,000.

The superior court, in deciding the case against the guardian of the widow, says:

"By the deed Mr. Adams transferred and assigned outright, to the trustee named, all the property named in the deed. It passed outright to them, and, after that, was no longer in his control. He was one of the trustees, but both of the trustees were to act, and therefore it passed away from his control. It is true. it was a voluntary act, it was a gift, a settlement; but it was a settlement for uses named in the deed, for one use in his lifetime, for other uses after his decease. Certainly since the case of *Kekewich* v. *Manning,* I. D. M. & G. 176, it cannot be disputed that this was an irrevocable distribution of his

Redkey v. Worthington.

property. And while the case *In Re Lady Way's Trust*, 2 D. J. & S. 365, is not a leading case, it is more clearly explicit that the disposition made by this deed of trust is an irrevocable disposition.

Hence, during the life of the trust, this property was beyond the control of Mr. Adams. He could not revoke the trust by any subsequent deed or by will. During the life of that trust the property was to be disposed of according to the terms of the deed. It is true, if his wife had died during his life, the property would go to him; but it would go to him, not because he, by any subsequent deed, could bring it back to him, but because it came to him by the terms of the trust itself.

Then the property was in the hands of the trustees; the legal title was in them; the beneficiary interest in the beneficiaries named in the deed. He dying, therefore, during the continuance of the trust, could not be said to be, at the time of his death, the possessor of that property, or the owner, and, therefore, the property could not be considered as part of the assets of his estate, and therefore, cannot be distributed as part of his estate.''

This judgment was affirmed by the Supreme Court, Minshall, J., dissenting, without report, March 2, 1892.

In *Martin* v. *Funk*, 75 N. Y. 134 [31 Am. Rep. 446], it was held:

''To constitute a valid gift the transfer must be consummated, and not remain incomplete, or rest in mere intention; and that is so whether the gift is by delivery only, or by the creation of a trust in a third person, or in the donor; enough must be done to pass the title.''

And in the opinion the court says:

''The intestate, Mrs. Boone, in 1886, deposited in the Citizens' Savings Bank $500, declaring at the time that she wanted the account to be in trust for Lillie Willard, who is the plaintiff. The account was so entered and a pass book delivered to the intestate, which contained these entries: 'The Citizens' Savings Bank in account with Susan Boone, in trust for Lillie Willard. 1866, March 23, $500.'

Highland County.

"A deposit of the same amount, and in the same manner, was made in trust for Kate Willard, now Mrs. Brown. This money belonged to the intestate at the time of the deposits."

Quoting from Lord Ch. J. Turner, p. 138, in *Milroy* v. *Lord*, 4 De Gex, F. & J. 264, the ruling general principles, he says:

"I take the law of this court to be well settled that in order to render a voluntary settlement valid and effectual the settler must have done everything which according to the nature of the property comprised in the settlement, was necessary to be done in order to transfer the property, and render the settlement binding upon him. He may of course do this by actually transferring the property to the persons for whom he intended to provide, and the provision will then be effectual, and it will be equally effectual if he transfer the property to a trustee for the purposes of the settlement, or declare that he himself holds it in trust for those purposes, and if the property be personal, the trust may, I apprehend, be declared either in writing or by parol."

Again at page 141, he says:

"Mr. Hill in his work on trustees, after saying 'that it is extremely difficult in the present state of authorities, to define with accuracy the law affecting this very intricate subject,' lays down the following as the result: 'When the author of the voluntary trust is possessed of the legal interest in the property, a clear declaration of trust contained in, or accompanying, a deed or act which passes the legal estate, will create a perfect executed trust, and so a declaration or direction by a party, that the property shall be held in trust for the object of his bounty, though unaccompanied by a deed or other act divesting himself of the legal estate, is an executed trust.'

"If there is a valid declaration of trust, that is sufficient of itself, I apprehend, to transfer the title, but the difficulty is in determining what constitutes such a declaration, and whether a mere formal transfer of the property, as in the case of the medical attendant, is sufficient, is a question upon which there

Redkey v. Worthington.

is some difference of opinion. No particular form of words is necessary to constitute a trust, while the act or words relied upon must be unequivocal, implying that the person holds the property as trustee for another.''

So in *Young* v. *Young, supra,* it is said:

''To establish a valid gift, a delivery of the subject of the gift to the donee, or to some person for him, so as to divest the possession and title of the donor, must be shown.''

And Rapallo, J., says, page 438:

''To create a trust, the acts or words relied upon must be unequivocal, implying that the person holds the property as trustee for another.''

So, in *Barry* v. *Lambert,* 98 N. Y. 300, 306 [50 Am. Rep. 677], Ruger, C. J., says:

''It is well settled that a trust in personal property may be created by parol, and that no particular form of words is necessary for its creation, but the words or acts relied on to effect that object should be unequivocal, and plainly imply, that the party making them intended to divest himself of his interest in the property, and to hold it in trust for the use and benefit of another.''

So, in *Wadd* v. *Hazelton,* 137 N. Y. 215 [33 N. E. Rep. 143; 21 L. R. A. 693; 33 Am. St. Rep. 707], Peckham, J., says:

''While it is true that no particular form of words is necessary to create a trust of this nature, and while it may be created by parol or in writing, and may be implied from the acts or words of the person creating it, yet it is also true that there must be evidence of such acts done or words used on the part of the creator of the alleged trust, that the intention to create it arises as a necessary inference therefrom, and is unequivocal; the implication arising from the evidence must be that the person holds the property as trustee for another. The acts must be of that character which will admit of no other interpretation than that such legal rights as the settler retains are held by him as trustee for the donee; the settler must either transfer the property to a trustee or declare that he holds it himself in trust. An intention to give, evidenced by writing, may be

most satisfactorily established, and yet the intended gift fail because no delivery is proved. And where an intention to give absolutely is evidenced by a writing which fails because of its nondelivery, the court will not and cannot give effect to an intended absolute gift by construing it to be a declaration of trust, and valid, therefore, without delivery.''

In *Hiserodt* v. *Hamlett,* 74 Miss. 37 [20 So. Rep. 143], it is held:

''We must not allow ourselves to be confused by the fact that the event upon the happening of which the interest to be enjoyed was death. It is as competent for one to make the event in the future upon the happening of which the estate is to come into possession, the death of the donor, as any other event. The fact, in such case, that the event named is death, rather than some other selected event, is not at all determinative, of the quality or legal character of the trust. There is no testamentary feature here. One may do what he will within legal lines with his own.''

So there are quite a large number of other authorities, and it is unnecessary to quote more from them, holding that a trust may be created. The question now is, whether or not this attempted declaration of a trust here is really one which comes within the definition in *Mannix* v. *Purcell, supra,* and within the principles laid down in the decisions which we have just referred to.

In this case, in this instrument there is a trustee—Martin Redkey; there is a subject-matter—the money; there is a use —the holding of the money for the use of these people, and there are beneficiaries; so that every element that is necessary to constitute a trust within the definition referred to by the Supreme Court, is contained within this written instrument.

The money, $6,200, was delivered to the trustee, and it seems as though everything that was necessary to be done to create a distinct, perfect trust, fully identified and complete, and passing beyond the control of the donor or creator of this fund, is declared within this instrument, and that it fully comes

Redkey v. Worthington.

within the definition of a trust as fully defined by all of the authorities.

It must not be lost sight of, and we think maybe it has been to some extent in this case,—it must not be lost sight of that the delivery in law of this $6,200, to the trustee, Martin Redkey, was a delivery and passed the legal title to the $6,200, effectually beyond the control of the creator of the trust.

Now, that is the difference between the Ohio cases that the learned counsel rely upon, and this case, and it is a very important distinction. There is no question here about the object to be attained. It is fully set out, the beneficiaries are named, the amount and terms appear, and the use.

It is said, however, that by the very language of this instrument it shows that Martin Redkey was the agent of Joseph Worthington; that he called Martin Redkey "my" trustee, and that when he gave him the check, he gave him the check as trustee of Joseph Worthington, and Martin Redkey, when he deposited it in the bank, the deposit slip shows the account was opened by Martin Redkey, as trustee for Joseph Worthington.

It may be said so far as the entries in the book of the Leesburg Bank are concerned, made by Martin Redkey after the instrument was executed, would give no character to that instrument one way or the other. Its character was fixed upon its execution, and so far as Joseph Worthington using the language "my trustee" as conveying the idea he was his trustee, and not the trustee of the beneficiaries, is concerned, it is simply an expression denoting that he, Redkey, is the person he has chosen to carry out this trust. And in a strict sense, as he used it, he was his trustee; that is, in the sense he had selected him, and that is what he means by "my trustee," but the whole instrument shows that there wasn't one single thing that Martin Redkey, his trustee, was to do for Joseph Worthington with the $6,200; everything that is to be done by the written instrument shows that Joseph Worthington considered it passed entirely beyond his control and possession, and that the legal title passed to his trustee; everything that was to be done was to be done for the benefit of these beneficiaries, and

not for the benefit of Joseph Worthington; wasn't a single act, as agent or otherwise, that Martin Redkey was to do, that is not referable to the turning over of the funds to these beneficiaries.

Now, it is said they were engaged in a testamentary act at the time this instrument was executed; that on October 13, 1905, Joseph Worthington made his will, and Redkey appeared the next morning and talked the matter over, and was afraid these provisions would not be legal, and there would be some trouble about it, and that instead of incorporating it in the will, or leaving it there, they then devised this scheme by which they would evade the law by way of passing property under will, but would pass it under the name and title of "trustee," and that being so engaged at this time in a testamentary act for the disposition of his property, that that same character is imparted to this. On the other hand it may be argued from the testimony in this case that what they were doing at that time was to get away from the testamentary act because they discussed that, and while they were executing this paper writing, they, by their own declared intentions, were not engaged in a testamentary act; they were engaged in something other than making a will, and if they have not accomplished what they desire to do, viz., to not make this instrument a will, then they have not succeeded in carrying out their intentions.

We can hardly see how an instrument can be more effectual to create a trust than this. The very object and purpose of it was that Redkey should act as trustee for these people; that he should hold this money, and it was delivered to him, and the legal title passed.

It is said, however, that Joseph Worthington reserved in the paper a right to revoke this during his life.

In what you may call a "granting clause," if such a thing is applicable to a declaration like this, he used the word "appoint"—I "appoint Martin Redkey," and after, in the instrument, he has made the disposition creating the trustee and the beneficiaries, and directing what his trustee shall do, then he says:

"In the event of the death of said trustee, I request the

Redkey v. Worthington.

probate court to appoint a trustee to serve in his stead and complete the trust as above set forth.

"I reserve the right to revoke this appointment at any time during my life."

We are inclined to think that what he means there is, that he reserves the right to revoke the appointment that the probate court may make in case Martin Redkey died before Worthington, and the probate judge appoint somebody that he didn't like. It couldn't have reference very well to the whole trust or instrument. He doesn't say "I reserve the right to revoke this trust," but only the appointment that the probate judge might make. He probably wanted some one that was satisfactory to himself.

It is claimed, however, that if he reserved the power to revoke the appointment, that it would therefore carry with it and include with it, the revoking of the trust.

It is a well known rule of law, and needs no citing of authorities, that the court will never allow a trust to fail for want of a trustee; that the court, when applied to, will appoint a trustee rather than the trust fail.

Martin Redkey was simply the vehicle, the instrument, that Worthington made use of to carry out this trust, and the trust would not fail for the want of a trustee.

We are of the opinion that the language used by the settler or creator of this trust, being at the close, and wholly separated from the whole disposition of the trust property, shows an anxiety on his part that in no event the trust should fail for want of a trustee, and the whole instrument shows that the word "appoint" could not refer to, in his mind, nor include the trust.

The appointment is one thing, and the trust is another. But however that may be, even supposing that clause does refer to and give the creator of this trust in his lifetime a right to revoke it, does that extinguish the trust? Does that show that Martin Redkey was simply the agent or trustee or attorney in fact of Joseph Worthington, and that he could recall this at any time?

Highland County.

Thornton, Gifts Sec. 436, says:

"When a trust has been completely created, by no act of the donor can it be revoked without the consent of the donee, unless he has reserved the power to do so. This is true even though by some accident the estate has become revested in the donor. The donor is bound, if the trust be completed, though some contingency was forgotten and unprovided for; and if the trust is created by deed a mental or oral revocation is void. But the donor may reserve the right to revoke the trust; and the trust will remain until he exercise his authority under the power reserved."

Now, here is the syllabus in *Stone* v. *Hackett,* 78 Mass. (12 Gray) 227, which was relied upon by the superior court of Cincinnati in *Urner* v. *Yager,* 9 Dec. Re. 592 (15 Bull. 264).

"A delivery, without consideration, of shares in railroad corporations, with blank assignments endorsed thereon, upon trust to pay the income to the settler for life, and at his death to transfer the shares to certain charitable objects (the settler reserving the right to modify the uses or revoke the trust) is valid, and will be upheld in equity against the settler's widow, claiming the share which the law allows her in property; of which he died possessed."

So, in the case of *Van Cott* v. *Prentice,* 104 N. Y. 45, 46 [10 N. E. Rep. 257], the following clause was in the declaration of trust:

"subject in the meanwhile to my direction and pleasure, and to be returned to me in the event of my surviving him; and absolutely subject to my direction and, control until the event of my death."

Now, the Supreme Court say in that case, in respect to that portion of it, in the syllabus:

"That a valid trust was fully and completely constituted, and as the same was not revoked by the settler during his life, the trustee was entitled to the possession of the trust property; that it was immaterial that the grant was voluntary, and without consideration; that the declaration that the beneficiaries should have no legal or equitable right to enforce the trusts as

Redkey v. Worthington.

against the trustee while the settlement should remain unrevoked, but only as a denial of any right as against the settler; also that the validity of the title of the trustee was not effected by the fact that he held subject to the control and direction of P; that while the trust continued and existed only at the will of the settler, it was good and effectual, until revoked.''

There are a large number of other authorities that go to the same effect, and it seems to be held by an unbroken line of decisions that even where the settler has provided in the declaration of trust that he has the power of revoking during his life, that if he doesn't exercise it, the trust is still valid.

There are some other objections that the counsel have urged upon us as to the construction to be placed upon this instrument. We have gone over the cases thoroughly and read all the briefs, and we think that the construction aimed to be given to this paper writing by the learned counsel for the Worthington estate is worthy of consideration, but that we cannot overlook the plain provisions of the instrument itself and the words used. That which the words declare is the meaning of an instrument.

When he says: "I, Joseph Worthington of Highland county, Ohio, hereby appoint Martin Redkey a trustee in trust to receive and hold"—he doesn't call him "*my*" trustee.

He appoints him "a" trustee. It is said, however, that these beneficiaries had no knowledge of this, and never consented to it.

We think that is wholly without merit. Our Supreme Court has decided in *Mitchell* v. *Ryan*, 3 Ohio St. 377, that where the instrument is for the benefit of the donee or grantee, that his acceptance is not only a presumption of fact, but a presumption of law.

The judgment, therefore, will be reversed and remanded to the court of common pleas below for further proceedings.

I will note on the docket that the judgment is reversed because same is contrary to law, and for the reason the judg-

6 O. C. C. Vol. 32

ment below should have been for plaintiffs and cross petition-
ers in error, instead of for said Worthington, administrator,
defendant in error. Cause remanded to common pleas court
for further proceedings according to law.

Exceptions.

**Cherrington** and **Jones, JJ.,** concur.