Argued November 28, reversed December 18, 1917.

## PEOPLE'S BANK *v.* ROSTAD.*

### (169 Pac. 347.)

**Fraudulent Conveyances—Effect Between Parties.**

1. A deed to land, though made by the grantor, with the intent of delaying and hindering creditors, is as between him and his grantee operative to pass title, and is good as to all others until declared void.

**Fraudulent Conveyances—Burden of Proof.**

2. Plaintiff in action to set aside conveyance as fraudulent has the burden of proving the fraud alleged.

[As to proof of fraud in fraudulent conveyances, see note in 11 Am. St. Rep. 757.]

**Fraudulent Conveyances—Preferences by Debtors—Rights of Parties.**

3. A debtor has the right to prefer one creditor over another.

---

*On effect of participation by creditor in fraudulent intent of debtor which will make a transfer to pay or secure his debt invalid as to other creditors, see notes in 31 L. R. A. 609; 32 L. R. A. 72.

REPORTER.

**Fraudulent Conveyances—Notice—Effect.**

4. Where plaintiff sued his debtor, who, with intent to defraud, conveyed to another, and later, to cover a defalcation of the debtor, a trust agreement was made in favor of defendant by which defendant advanced the money to care for the defalcation in return for a mortgage on the lots, defendant having had no previous notice of the fraudulent intent acquired good title in view of Section 7401, L. O. L., excepting from statutes on fraudulent conveyances persons acquiring title for consideration without previous notice of the fraud.

**Fraudulent Conveyances—Failure to Record—Effect.**

5. Failure to record trust agreement by which one creditor obtained legal title to the debtor's land, which was made before a judgment was docketed, does not affect the rights of the parties nor render the conveyance void under Section 207, L. O. L., providing that: "A conveyance of real property, or any portion thereof, or interest therein, shall be void as against the lien of a judgment, unless such conveyance be recorded at the time of docketing such judgment, or the transcript thereof, as the case may be, or unless it be recorded within the time after its execution, provided by law, as between conveyances for the same real property."

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit instituted to cancel a conveyance of realty from the defendants Rostad to the defendant Harkson as being made in fraud of the rights of the plaintiff as a judgment creditor of Rostad and on the same ground to set aside an instrument concerning the same land to which all the defendants, except Clara Harkson, wife of Harry Harkson, were parties and which is more particularly described further on. It is admitted as stated in substance in the complaint that in an action commenced October 15, 1914, the plaintiff secured a judgment against the defendant H. Rostad which was docketed January 20, 1915; that an execution was issued and returned wholly unsatisfied; and that the defendant Rostad, the judgment debtor, is insolvent and wholly without property, except that herein involved. It is agreed also that on December 12, 1914, Rostad was the owner of the tract in question and after the filing of the plaintiff's com-

plaint in the action against him he conveyed the same to the defendant Harkson by an instrument purporting to be a general warranty deed which was recorded on that date in the deed records of Multnomah County. It is charged by the complaint and denied by the answer that this conveyance was purely voluntary and made by Rostad with the intent and purpose, in which Harkson participated, to hinder, delay and defraud the creditors of the former and particularly this plaintiff whose action against him was then pending. It is further stated that about December 17, 1914, for the purpose of further delaying and defrauding the plaintiff, Rostad, his wife, Harkson and the defendant Oregon Securities Company entered into a written agreement whereby Rostad and wife pretended irrevocably to convey to the Securities Company all their right in the premises and Harkson stipulated that he would hold the same in trust for the benefit of the company, all with the intent to hinder, delay and defraud the plaintiff, in which all three of the parties to that compact concurred with full knowledge thereof. The execution of this last tripartite agreement is admitted but the fraudulent intent and knowledge of the deceit of Rostad is denied. Harkson and the Securities Company affirmatively avow the execution of the instrument claiming for it that it was promulgated in good faith and for value on December 17, 1914. The complaint was not challenged by the answer of the Rostads. The reply traverses the answer of the Harksons and the Securities Company except as alleged in the complaint. A decree was rendered canceling the conveyance from Rostad to Harkson and the agreement between the Rostads, Harkson and the Securities Company and making the realty applicable to the satisfaction of the judgment. Harkson and the Securities Company appeal.    REVERSED. SUIT DISMISSED.

For appellants there was a brief and an oral argument by *Mr. Charles A. Johns.*

For plaintiff-respondent there was a brief and an oral argument by *Mr. Custer E. Ross.*

For defendants-respondents there was a brief submitted over the name of *Messrs. Clark, Skulason & Clark.*

Mr. Justice Burnett delivered the opinion of the court.

The chronology of the case is as follows: The action of the plaintiff against Rostad was commenced October 15, 1914, without attachment or other seizure of property. On December 12, 1914, Rostad made the voluntary conveyance to Harkson who paid nothing for it whatever but caused it to be recorded on that date. On December 17, 1914, Rostad. and his wife, parties of the first part, and Harkson, party of the second part, and the Oregon Securities Company, party of the third part, made the agreement conveying to the company the estate of the Rostads, leaving the legal title in Harkson in trust for the company, which last instrument was not recorded. The final happening is the judgment in favor of the plaintiff against Rostad docketed January 20, 1915. The evidence is very clear to the effect that the deed from Rostad to Harkson was without any consideration whatever, and so far as the former is concerned was made for the purpose of hindering and delaying the plaintiff in the collection of any possible judgment it might recover in the action then pending against him. Rostad testifies that he told Harkson of his purpose in making the conveyance. This is denied by Harkson. At this juncture, how-

ever, it was discovered by the Multnomah State Bank of which Rostad was the cashier, that he was defaulter to it in the sum of more than $20,000. Harkson was a director of that bank. The bank examiner required this deficit of capital to be made good and that the stockholders should immediately advance $10,000 in cash and otherwise restore the deficiency. To cure his defalcation *pro tanto*, Rostad conveyed to the Oregon Securities Company this and several other pieces of property for the benefit of the Multnomah State Bank and its directors who were compelled to repair the capital of that institution. As the particular tract involved was standing on the record in the name of Harkson it was made the subject of the agreement between the three parties mentioned and on the strength of that and the acquisition of the other tracts the Securities Company advanced the $10,000 in cash which was paid to the bank in part liquidation of Rostad's embezzlement.

1. On this state of facts the plaintiff maintains that the deed from Rostad to Harkson was utterly void *ab initio* and must be laid out of the case so that the only alienation of title by Rostad should be found in the unrecorded tripartite agreement by which he and his wife relinquished all their estate to the company for whom Harkson agreed to continue to hold the title thenceforward in trust. The fallacy of this proposition lies in the statement that the Rostad-Harkson deed is absolutely negligible for all purposes. It was and is operative as between the immediate parties to it to pass title from one to the other. It is good as to everyone else until declared void—else why the need of this or any litigation to set it aside? After its execution and delivery to Harkson, albeit without consideration, the legal title was in the grantee while at best

there remained only an equity in the grantor. It has been decided many times that there can be no judgment lien upon an equity: *Meier* v. *Kelly*, 22 Or. 136 (29 Pac. 265); *Budd* v. *Gallier*, 50 Or. 42 (89 Pac. 638). The plaintiff never had any legal hold upon the fee in the property. It was compelled to resort to equity for the enforcement of its claim. It called upon the chancellor to seize the property for the satisfaction of the judgment debt. Moving in favor of the plaintiff in furtherance of its request the court found the property burdened by the conveyance of Rostad's equity to the Securities Company and the trust declared by that instrument in Harkson. Remembering that the plaintiff had no claim at law upon the estate that could prevent its alienation we must determine whether the unrecorded conveyance to the Securities Company from the Rostads, coupled as it was with Harkson's declaration of trust, was fraudulent. There is strong ground for believing that Harkson knew of Rostad's crafty scheme against the plaintiff at the time the original conveyance was made. Rostad says it was fully explained to Harkson that the purpose was to keep the plaintiff from collecting the judgment it might obtain. Harkson denied this but tells the story that on coming into his place of business one day he found the deed to him which his partner said had been left there for him by Rostad and that without further inquiry he put it upon record and collected from Rostad the recording fee. It is an unusual occurrence that one man should take the conveyance of another's property without making any inquiry about the reason therefor and without paying any consideration.

2. 3. However this may be, it remains to consider whether the Securities Company participated in the scheme of Rostad, if any, to defraud the plaintiff. The

testimony goes no further than to show that some of the officers of the company were informed of the litigation between the plaintiff and Rostad prior to the rendition of the judgment. It is disclosed, however, that Rostad at all times contended that he owed the plaintiff nothing and that he could defeat the action. The law about realty transfers in fraud of creditors is crystallized into statutory form in this state. In Section 7379, L. O. L., it is laid down, in substance, that every conveyance of any estate or interest in land made with the intent to hinder, delay or defraud creditors of their lawful suits or demands, shall be void as against the person who hindered, delayed or defrauded. Other portions of the enactment of which this section is a part are as follows:

Section 7400: ''The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law.''

Section 7401: ''The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor.''

It is beyond dispute that the company paid $10,000 in cash for the transfer of these different properties from Rostad to it and that the money thus realized was applied to the payment of Rostad's debt to his bank on account of his shortage in his accounts. Having alleged fraud the plaintiff must prove it by a preponderance of the testimony. In very truth the proof shows nothing more than that the company perhaps had knowledge of the pendency of the action against Rostad. This, however, does not render his property utterly inalienable. His power of disposition remains

the same as it was before. Conceding that he was in fact in debt to the plaintiff at that time, we must also admit that he owed his bank. So far as that is concerned he had the unquestioned right to prefer one creditor over the other. He properly could pay to the bank all his holdings or the proceeds thereof towards the reduction of his obligation to it although that would leave plaintiff without anything: *Sabin* v. *Columbia Fuel Co.*, 25 Or. 15 (34 Pac. 692); *Currie* v. *Bowman*, 25 Or. 364 (35 Pac. 848). If lawfully he could do this, he rightfully could call the Securities Company to his aid in accomplishing the same result and the latter could render the desired assistance. In other words, he could sell all he had to the company and direct it to pay the purchase price on his obligation to one creditor to the entire exclusion of another. The participation of the company in what the debtor might legally do himself furnished no reason for its amercement.

4. There is no direct testimony about the actual value of the realty conveyed to the Securities Company. The property involved was a single lot with a residence thereon occupied by the Rostads. It was subject to a prior mortgage for $2,500, the validity of which is not questioned. There is also something said in the testimony about an agreement between the Securities Company and the Rostads to reconvey all the property involved on payment of $6,000. This is the only indication of the real value of the property, yet the company unquestionably advanced $10,000 on the strength of the conveyance, coupled with the note of the directors of the Multnomah State Bank. In brief, as against the Securities Company, the evidence does not show previous notice of Rostad's fraudulent intent, if any existed. The company is within the provisions of Section 7401, L. O. L., against the impair-

ment of the title acquired for the valuable consideration of $10,000 which it actually paid. Having lawfully acquired a precedence it is entitled to maintain it. This branch of the subject is discussed in *Ball* v. *Danton,* 64 Or. 184 (129 Pac. 1032); *Coffey* v. *Scott,* 66 Or. 465 (135 Pac. 88); *Coolidge* v. *Oberlin,* 66 Or. 563 (135 Pac. 167).

5. It is true the agreement by which it obtained its interest in the lot in question was not recorded. In that connection the plaintiff contends that Section 207, L. O. L., applies:

"A conveyance of real property, or any portion thereof, or interest therein, shall be void as against the lien of a judgment, unless such conveyance be recorded at the time of docketing such judgment, or the transcript thereof, as the case may be, or unless it be recorded within the time after its execution, provided by law, as between conveyances for the same real property."

As already pointed out this depends upon whether there was in fact a lien. But at no time after the judgment was acquired did Rostad have any more estate in the property than an equity to which the lien did not attach. Hence the plaintiff had no hold in law upon the realty. The unrecorded conveyance or agreement or whatever it may be called, upon which the Securities Company relies as to the lot under consideration does not come within the terms of Section 207. These conclusions lead to a reversal of the decree and a dismissal of the plaintiff's suit.

REVERSED.    SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.